# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

A.C., C.P., T.T., T.M., T.B., R.P., and C.W.,

    Plaintiffs, by and through their next friends and guardians,

    v.

Magnolia Independent School District,

    Defendant.

Civil Action No. 4:21-cv-3466

# PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................. **1**

**NATURE AND STATUS OF THE PROCEEDINGS** ............................................ **2**

**SUMMARY OF ISSUES** ....................................................................................... **2**

**SUMMARY OF ARGUMENT** ............................................................................. **2**

**BACKGROUND** .................................................................................................... **6**

   I.   Magnolia ISD's Grooming Code Facially Discriminates Based on Gender...................... 6

  II.  Plaintiffs' Long Hair Is Critically Important to Them ................................................. 7

 III.  Magnolia ISD Previously Allowed All Students to Wear Long Hair in the District Without Any Issues ............................................................................................... 8

 IV.  Magnolia ISD Has Vigorously Enforced its Gender-Based Hair-Length Rule This School Year ......................................................................................... 9

  V.  Plaintiffs Are Suffering Irreparable Harm and Have Faced Increasingly Harsh Punishments for Wearing Long Hair.................................................................. 10

 VI.  While Plaintiffs Have Been Severely Punished, Many Other Students in Magnolia ISD, Including Boys on the High School Football Teams, Have Worn Long Hair Without Repercussion ....................................................................................... 15

**ARGUMENT** ....................................................................................................... **16**

   I.   Plaintiffs Have a Substantial Likelihood of Success on Their Claims.............................. 17

     A.  Magnolia ISD's Gender-Based Hair Policy Violates the Equal Protection Clause ........ 17

       1.  Magnolia ISD's Grooming Policy Facially Discriminates Based on Gender and Is Subject to Heightened Scrutiny ................................................................. 17

       2.  Magnolia ISD's Gender-Based Hair Policy Fails Heightened Scrutiny...................... 20

     B.  Magnolia ISD's Gender-Based Hair Policy Violates Title IX ....................................... 22

  II.  Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction ......................... 25

 III.  The Balance of Equities Tips Sharply in Plaintiffs' Favor ............................................ 26

 IV.  Injunctive Relief Is Necessary to Serve the Public Interest ............................................ 27

  V.  The Court Should Not Require Plaintiffs to Provide Security Prior to Issuing a Temporary Restraining Order. ....................................................................................... 27

**CONCLUSION** ........................................................................................... **27**

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Hayden ex rel. A.H. v. Greensburg Community School Corporation*,
   743 F.3d 569 (7th Cir. 2014) .................................................................... 24

*Arnold v. Barbers Hill Independent School District*,
   479 F. Supp. 3d 511 (S.D. Tex. 2020) ...................................... 19, 23, 26, 27

*Ayton v. Holder*,
   686 F.3d 331 (5th Cir. 2012) .................................................................... 18

*Corrigan Dispatch Co. v. Casa Guzman, S. A.*,
   569 F.2d 300 (5th Cir. 1978) .................................................................... 27

*Craig v. Boren*,
   429 U.S. 190 (1976) ................................................................................. 18

*Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*,
   421 F. App'x 366 (5th Cir. 2011) .............................................................. 18

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................. 26

*J.E.B. v. Alabama ex rel. T. B.*,
   511 U.S. 127 (1994) ................................................................................. 17

*Karr v. Schmidt*,
   460 F.2d 609 (5th Cir. 1972) .............................................................. 18, 19

*Keyes v. Sch. Dist. No. 1, Denver, Colorado*,
   396 U.S. 1215 (1969) ............................................................................... 22

*Kite v. Marshall*,
   454 F. Supp. 1347 (S.D. Tex. 1978) ........................................................ 27

*McKee v. City of Rockwall, Tex.*,
   877 F.2d 409 (5th Cir. 1989) .................................................................... 18

*Mississippi Univ. for Women v. Hogan*,
   458 U.S. 718 (1982) ............................................................................ 18, 20

*N. Haven Bd. of Educ. v. Bell*,
    456 U.S. 512 (1982) ................................................................................................. 23

*Nobby Lobby, Inc. v. City of Dallas*,
    970 F.2d 82 (5th Cir. 1992) ..................................................................................... 27

*Peltier v. Charter Day School, Inc.*,
    8 F.4th 251 (4th Cir. 2021) ...................................................................................... 24

*Reed v. Reed*,
    404 U.S. 71 (1971) ................................................................................................... 18

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017) ...................................................................................*passim*

*Sewell v. Monroe City School Board*,
    974 F.3d 577 (5th Cir. 2020) ................................................................................... 24

*Sturgis v. Copiah Cty. Sch. Dist.*,
    No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355 (S.D. Miss. Sept. 15,
    2011) ........................................................................................................................ 19

*United States v. Virginia*,
    518 U.S. 515 (1996) ........................................................................................*passim*

**Statutes**

20 U.S.C. § 1681(a) ................................................................................... 4, 22, 24

20 U.S.C. § 1686 (2012) .................................................................................... 24

**Other Authorities**

7 C.F.R. § 15a.31(b)(4) ....................................................................................... 23

34 C.F.R. § 106.31(b)(4) ..................................................................................... 23

34 C.F.R. § 106.31(b)(7) ..................................................................................... 23

Federal Rule of Civil Procedure 65 ............................................................... 2, 27

**INTRODUCTION**

Plaintiffs, who are seven students at Magnolia Independent School District ("Magnolia ISD"), seek emergency relief from this Court because Magnolia ISD is severely punishing, threatening punishment and, in some cases, pushing Plaintiffs out of school altogether, only because of Plaintiffs' gender. Magnolia ISD maintains a policy that facially discriminates against students based on gender by requiring boys, but not girls, to wear short hair. This outdated policy not only lacks any justification, but is also being applied inconsistently, with certain students— particularly members of the high school football teams—allowed to long hair without repercussion. Yet Magnolia ISD continues to force Plaintiffs either to conform to the district's gender stereotype that boys must wear short hair or face increasingly harsh consequences that threaten to further derail Plaintiffs' lives and educational careers.

Plaintiffs and their families have urged Magnolia ISD to stop discriminating against them, but the district has only intensified its punishment. Plaintiffs have been suspended and separated from their friends, denied classroom instruction, barred from extracurricular activities, removed from their home campuses, and even forced to temporarily unenroll from school—all because of Plaintiffs' gender. If Plaintiffs were girls, they would be permitted to wear long hair at Magnolia ISD without any problem. But because most Plaintiffs are boys and one is non-binary, they have been harshly disciplined and threatened with increasingly severe punishments based on gender.

Magnolia ISD's gender-based hair policy violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972. This policy is actively imposing harm on Plaintiffs, including by forcing three Plaintiffs to temporarily drop out of school entirely. The district also threatens to inflict

harsh punishments on other Plaintiffs for wearing long hair in the coming days and weeks. This Court has the authority to stop this ongoing and unconstitutional deprivation of Plaintiffs' rights. Plaintiffs seek emergency relief to enjoin the district from continuing to harm them through its discriminatory, gender-based hair policy.

## NATURE AND STATUS OF THE PROCEEDINGS

This action is brought by seven students against Defendant Magnolia ISD by and through their next friends and legal guardians. This motion requests emergency relief to immediately enjoin Magnolia ISD from enforcing its discriminatory, gender-based hair policy that will continue to cause Plaintiffs irreparable harm absent injunctive relief.

## SUMMARY OF ISSUES

This motion seeks a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65(a) and (b). The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the court can hold an adversarial hearing for a preliminary injunction. Fed. R. Civ. P. 65(b)(3). Plaintiffs seek emergency relief to allow them to receive equal access to a public education while this case is pending and prior to the Court's setting of a hearing for preliminary injunction. Plaintiffs notified counsel for Magnolia ISD of this lawsuit and their intent to file this motion at 8:27 am on Thursday, October 21, and Defendant did not respond with their position on this motion before the time of filing.

## SUMMARY OF ARGUMENT

No student should have their life and academic career completely derailed based solely on that student's gender. Nor can public school districts punish students because of their gender or compel students to conform to gender stereotypes. But that is what is happening here. Magnolia ISD has zealously punished and threatened Plaintiffs with punishment—and pushed

some Plaintiffs out of school entirely—based only on Plaintiffs' gender. This is a severe and ongoing violation of the Equal Protection Clause and Title IX. Plaintiffs require the urgent assistance of this Court to preserve the status quo and allow Plaintiffs to receive a public education without being actively discriminated against while this lawsuit continues.

Every element required for emergency injunctive relief weighs strongly in Plaintiffs' favor. *First*, Plaintiffs are likely to succeed on the merits of their claims. The legal issues are straightforward. The district is violating the Equal Protection Clause by subjecting boys and girls to facially different treatment based on gender. This policy requires hair "*for male students*" to be "no longer than the bottom of a dress shirt collar, bottom of the ear, and out of the eyes." Declaration of Nina Kumar ("Kumar Decl.") at ¶ 3 and Ex. 1 at 42.[1] This government-drawn gender classification triggers heightened scrutiny under the Equal Protection Clause and can only be maintained if the school district establishes an "exceedingly persuasive justification" for treating students differently based on gender. *United States v. Virginia*, 518 U.S. 515, 533 (1996).

Magnolia ISD does not meet this standard. There is no justification for treating Plaintiffs differently based on gender from other students who are still permitted to wear long hair. The only true justification rests on "overbroad generalizations about the different talents, capacities, or preferences of males and females," *Virginia*, 518 U.S. at 533, and is therefore invalid. In prior

---

[1]     Plaintiffs have filed eight declarations in support of this motion for a temporary restraining order and preliminary injunction: Declaration of Nina Kumar ("Kumar Decl."); Declaration of Azucena Loredo ("Loredo Decl."); Declaration of Jerry Privitt ("Privitt Decl."); Declaration of Donald Tadlock ("Tadlock Decl."); Declaration of Danielle Miller ("Miller Decl."); Declaration of Michael Berger ("Berger Decl."); Declaration of Alex Garside ("Garside Decl."); and Declaration of Crystal Waugh ("Waugh Decl."). Plaintiffs also submit 59 exhibits in support of this motion for a temporary restraining order and preliminary injunction, as described in the declarations.

school years, Plaintiffs were permitted to wear long hair at Magnolia ISD without any disciplinary consequences. Still today, many other students at Magnolia ISD continue to be permitted to wear long hair, including some boys who are members of the high school football teams. This uneven enforcement of Magnolia ISD's hair policy demonstrates its arbitrary nature and total lack of justification. Plaintiffs have an equal right to receive a public education as other students, but they have instead had their lives upended because they fail to conform to Magnolia ISD's discriminatory and stereotypical gender rules.

Magnolia ISD's gender-based hair policy also violates Title IX, which states that no person in the United States shall "on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Magnolia ISD is engaging in explicit gender discrimination against Plaintiffs that violates Title IX with no exception under the statute, and Plaintiffs are therefore likely to succeed on the merits of both their Title IX and Equal Protection claims.

*Second*, irreparable injury to these students continues on a daily basis. Plaintiffs and their families have tried to persuade Magnolia ISD to stop discriminating against them based on gender, but the district has only escalated punishments that are causing Plaintiffs significant harm. Three Plaintiffs have now been forced to temporarily unenroll from the district after being denied classroom instruction, barred from participating in school activities, separated from their peers while in in-school suspension (ISS) for over five weeks, and sent to the district's disciplinary alternative education program (DAEP), where they faced even harsher punishments based only on their gender. These Plaintiffs suffer every day that they are not allowed back in

school and fall farther behind their peers because of Magnolia ISD's ongoing discrimination against them.

Other Plaintiffs also face imminent and irreparable harm even though they were previously forced to cut their hair under threat of exclusionary discipline, since their hair has grown quite long and they could face severe and cascading consequences in the coming days or weeks. A temporary restraining order and injunction must issue to prevent these irreversible and severe harms from occurring.

*Third*, the balance of equities tips sharply in Plaintiffs' favor. Plaintiffs will suffer tremendously if Magnolia ISD is permitted to keep discriminating against them because of their gender. Plaintiffs will be denied equal access to a public education, miss out on extracurricular activities, and be subject to increasingly harsh penalties that have already derailed Plaintiffs' educational careers. Conversely, Magnolia ISD has already shown that there is no detrimental effect if Plaintiffs are allowed to go to school while wearing long hair. Last school year, every student in the district was permitted to wear long hair during in-person classes and school activities; some Plaintiffs previously wore long hair in the district for years without any problem; and many girls in the district—and some boys—continue to wear long hair today. An injunction will merely allow Plaintiffs to receive the same equal access to a public education as other students while this case is pending.

*Fourth*, granting injunctive relief to protect Plaintiffs' constitutional and federal rights certainly serves the public interest. It harms the public interest to permit Magnolia ISD to subject Plaintiffs to severe and ongoing gender discrimination in violation of federal law, and injunctive relief is necessary to protect Plaintiffs' constitutional and statutory rights.

Because Plaintiffs continue to suffer egregious harm from Magnolia ISD's gender-based hair policy—and because they meet every element for injunctive relief—this Court should issue a temporary restraining order and a preliminary injunction to allow Plaintiffs to keep receiving a public education without being discriminated against based on gender while this case is resolved.

## BACKGROUND

### I.    Magnolia ISD's Grooming Code Facially Discriminates Based on Gender

On August 2, 2021, the Magnolia ISD school board voted to approve the Magnolia ISD 2021-2022 Student Handbook, which contains the district's dress and grooming code for students in all grade levels from kindergarten through twelfth grade. The Magnolia ISD Student Handbook states that "hair will . . . [b]e no longer than the bottom of a dress shirt collar, bottom of the ear, and out of the eyes *for male students.*" Kumar Decl. at ¶ 3 and Ex. 1 at 42 (emphasis added). Hair must also "[n]ot be pinned up in any fashion nor be worn in a ponytail or bun *for male students.*" *Id.* (emphasis added).

If students do not comply with this gender-based hair policy, the Magnolia ISD Student Handbook authorizes school administrators to engage in escalating punishments against these students: "If the principal determines that a student's grooming or clothing violates the school's dress code, the student will be given an opportunity to correct the problem at school. If not corrected, the student may be assigned to in-school suspension for the remainder of the day, until the problem is corrected, or until a parent or designee brings an acceptable change of clothing to the school. Repeated offenses may result in more serious disciplinary action in accordance with the Student Code of Conduct." *Id.* at 43.

Magnolia ISD's justification for its dress and grooming code was adopted by the Magnolia ISD school board on June 4, 2007. Kumar Decl. at ¶ 5 and Ex. 3. This justification is published in the FNCA (Local) policy, which states: "The District's dress code is established to

6

teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority." *Id.*

Magnolia ISD's gender-specific hair policy is explicitly based on impermissible gender stereotypes about what constitutes typical and appropriate "masculine" behavior and appearance standards for boys. The requirement that boys, and not girls, must wear short hair flows from the assumption that boys and girls are inherently different and that these differences must translate into separate standards of grooming and appearance.

## II.   Plaintiffs' Long Hair Is Critically Important to Them

Plaintiffs are seven students in Magnolia ISD who each view their hair as deeply personal to them and an important part of their identity and self-expression.

Plaintiff A.C. is nine years old, in fourth grade, and has worn long hair for his entire life. Loredo Decl. at ¶ 2. He has never once had a haircut and has only trimmed, rather than cut, his hair. *Id.* at ¶ 4. Wearing long hair is a critical part of who A.C. is. He is Latino and many men in his family wear long hair, including his dad and uncle. *Id.* Wearing long hair adds to A.C.'s self-confidence and is an important part of his family heritage. *Id.*

Plaintiff C.P. is fifteen years old and in tenth grade. He considers his hair to be one of the only aspects of his life that he has full control over: he had a particularly difficult time during the COVID-19 pandemic and lost both his mother and grandmother in the past year. Privitt Decl. at ¶ 3. C.P. has grown his hair out for the past few years and wearing long hair is deeply important to him. *Id.*

Plaintiff T.T. is seventeen years old, a junior in high school, and he has worn long hair since his freshman year without any problem. Tadlock Decl. at ¶ 3. T.T. is proud of his hair and he wears it groomed and out of his eyes. *Id.*

Plaintiff T.M. is eleven years old, is in fifth grade, and is non-binary. Miller Decl. at ¶ 3. T.M. wears long hair as a critical part of expressing their gender and wore long hair in Magnolia ISD for all of last spring without any issues. *Id.* at ¶ 7. If T.M. is forced to wear short hair based on gender stereotypes associated with their gender assigned at birth, T.M. will lose part of who they are and sacrifice an essential element of their gender expression. *Id.* at ¶ 4.

Plaintiff T.B. is seventeen years old, in eleventh grade, and he has attended Magnolia ISD since kindergarten. Berger Decl. at ¶ 2. T.B. has worn long hair since sixth grade in the district without any problem. *Id.* at ¶ 4. Wearing long hair is an important part of T.B.'s identity and many of the people that T.B. looks up to wear long hair, including his dad. *Id.* at ¶¶ 4–5.

Plaintiff R.P. is seven years old and a second-grade student. Garside Decl. at ¶ 2. R.P. has always worn long hair as a way to express himself and he cries and shuts down whenever he has been forced to cut his hair. *Id.*

Plaintiff C.W. is twelve years old and a seventh-grade student. Waugh Decl. at ¶ 2. He has worn long hair for most of his life, and wearing long hair gives him confidence, helps him feel comfortable, and makes him feel unique. *Id.* at ¶ 3.

All Plaintiffs believe that their hair is deeply personal to them and seek to wear long hair in Magnolia ISD without being punished—as they did in the past, and as many other students in the district are still permitted to do today.

## III.   Magnolia ISD Previously Allowed All Students to Wear Long Hair in the District Without Any Issues

Prior to the COVID-19 pandemic, Magnolia ISD had a gender-specific hair policy in the Student Handbook, but this policy was not enforced against all students in the district. Plaintiffs T.T. and T.B. wore long hair in Magnolia ISD schools for years without ever being told to cut their hair by school administrators. Tadlock Decl. at ¶ 3; Berger Decl. at ¶ 4. Wearing long hair

8

did not cause these students or anyone else any problems, nor did it jeopardize these Plaintiffs'

grooming and hygiene, discipline, safety, lack of disruption, or respect for authority. *See* Tadlock

Decl. at ¶ 4; Berger Decl. at ¶ 7.

In August 2019, Plaintiff R.P. was told that he would need to cut his hair if he did not

want to spend his kindergarten year in ISS. Garside Decl. at ¶ 5. R.P. was forced to cut his hair

that October, which was a traumatic experience for R.P. since he had always worn long hair. *Id.*

at ¶ 6. But when the COVID-19 pandemic shut down in-person school in March 2020, R.P. was

permitted to keep growing his hair out, just as other students in Magnolia ISD had previously

done without any issue. *Id.* at ¶ 10.

In the fall of 2020, Magnolia ISD resumed in-person instruction and, for the entire 2020-

2021 school year, Magnolia ISD did not require any student in the district to cut their hair based

on gender. *See* Tadlock Decl. at ¶ 4; Miller Decl. at ¶ 7; Berger Decl. at ¶ 6; Garside Decl. at ¶

11; Waugh Decl. at ¶ 4. All Plaintiffs enrolled in the district last school year wore long hair in all

in-person classes and school activities without being subject to any discipline. *Id.*

## IV.   Magnolia ISD Has Vigorously Enforced its Gender-Based Hair-Length Rule This School Year

Although most Plaintiffs previously wore long hair in Magnolia ISD without any

problem, the district chose to vigorously enforce its gender-based hair policy this school year by

punishing and threatening to punish Plaintiffs for wearing long hair because of their gender.

On August 11, 2021, all Plaintiffs went to school for the first day of the new school year.

Like all students, Plaintiffs were nervous but excited to start school, and two Plaintiffs—A.C.

and C.P.—were particularly eager to return to in-person classes for the first time after having

done virtual schooling for most of the past two school years. *See* Loredo Decl. at ¶ 3; Privitt

Decl. at ¶ 4.

At the start of this school year, Plaintiffs were told by school administrators that they would need to cut their hair to comply with the district's gender-based hair rules. Loredo Decl. at ¶ 8; Privitt Decl. at ¶ 7; Tadlock Decl. at ¶ 5; Miller Decl. at ¶ 8; Berger Decl. at ¶ 8; Garside Decl. at ¶ 12; Waugh Decl. at ¶ 9. Each Plaintiff was forced to comply or face cascading consequences from Magnolia ISD, starting with being sent to in-school suspension (ISS). *Id.*

During the first few weeks of school, Plaintiffs, their parents, and community members tried repeatedly to ask the district to stop discriminating against students based on gender. *See, e.g.,* Loredo Decl. at ¶¶ 16–17; Berger Decl. at ¶ 17; Waugh Decl. at ¶ 9. But Magnolia ISD administrators ignored Plaintiffs' concerns and escalated punishments against them. *Id.* Plaintiffs filed grievances with the school district, went to speak at school board meetings, and shared their concerns to the media, but Magnolia ISD continued enforcing its discriminatory grooming policy and ratcheting up punishments against Plaintiffs. *Id.*

## V. Plaintiffs Are Suffering Irreparable Harm and Have Faced Increasingly Harsh Punishments for Wearing Long Hair

In mid-August, Plaintiffs A.C., C.P., T.T., T.M., and T.B. were all sent to ISS for wearing long hair. Loredo Decl. at ¶ 11; Privitt Decl. at ¶ 9; Tadlock Decl. at ¶ 6; Miller Decl. at ¶ 12; Berger Decl. at ¶ 10. For five weeks, from August 23 to September 30, Plaintiff A.C. was confined to ISS for wearing long hair. Loredo Decl. at ¶ 11. During this time, A.C. was separated from all of his fourth-grade classmates, prevented from receiving regular classroom instruction, and not permitted to attend art, music, physical education, recess, or lunch. *Id.* at ¶ 13. While A.C. was in ISS, his grades plummeted and he found it impossible to make friends, especially since this was his first year at Ellisor Elementary School. *Id.* at ¶ 12. The only time that A.C. interacted with other students was on the school bus, where another student mocked him by calling him "ISS kid." *Id.* at ¶ 14.

On September 30, Magnolia ISD removed A.C. from campus entirely and ordered him to be sent to the district's DAEP for 35 school days, or seven weeks, because of his gender and the fact that he wears long hair. *Id.* at ¶ 20 and Exs. 50 and 51. DAEP is an alternative disciplinary school that is typically reserved for students who have violated state or federal law or committed serious violations of school policies. Ex. 52. Magnolia ISD does not provide any transportation to DAEP, and DAEP policies require boys to wear short hair and authorize even harsher punishments against students who do not comply, including requiring a parent to sit in class with the student, before or after school detention, isolation, loss of a desk (requiring the student to sit on a stool), additional days added to DAEP, in or out of school suspension, being forced to copy the DAEP rules by hand, and referrals to law enforcement. *Id.*

Even while A.C. was in ISS, he took the bus to school with his little sister, who wears long hair and has never been punished for it. Loredo Decl. at ¶ 23. But due to the DAEP placement, A.C.'s sister has to ride the bus alone and he no longer had a way of getting to school because his dad leaves for work early in the morning and his mom rarely drives. *Id.* Because of these transportation issues and the substantial threat of facing even more serious punishments while being in DAEP, A.C.'s family had no viable option but to unenroll him from the district on October 12. *Id.* at ¶¶ 22 and 24.

Because of the DAEP order against him, A.C. faces significant difficulty enrolling in any other public school district in the state without completing the 35-day DAEP punishment that Magnolia ISD has imposed against him, even though many other school districts do not have the same discriminatory gender-based hair policy as Magnolia ISD. *Id.* at ¶ 25 and Ex. 51. A.C. is currently being homeschooled, but this is immensely harmful to him since both of his parents work and he already had to spend most of the previous two school years learning virtually. *Id.* at

¶ 26. A.C. desperately seeks to return to in-person school with his sister as quickly as possible without being forced to cut his hair. *Id.*

Plaintiff C.P. was told that he needed to cut his hair and was sent to ISS for five weeks starting on August 23. Privitt Decl. at ¶ 9. In ISS, C.P. was forced to sit on a stool all day at a desk that was too short for him in a cold and uncomfortable room. *Id.* at ¶ 12. His grades dropped significantly and he was unable to make friends while being separated from all of his peers and forced to miss out on all school activities. *Id.* at ¶¶ 11 and 13.

Prior to the start of school, C.P. tried out for and secured a spot on Magnolia West High School's junior varsity tennis team. *Id.* at ¶ 5. But because he was in ISS for wearing long hair, C.P. was forced to miss all of his tennis practices and matches, even though other high school boys were permitted to play football while wearing long hair. *Id.* at ¶¶ 14–16. C.P. and his family voiced their concerns to the district through the grievance process and by speaking at school board meetings, but Magnolia ISD only punished him even more. *Id.* at ¶¶ 17–20. On September 30, the district ordered C.P. to be removed from campus and sent to DAEP. *Id.* at ¶ 23 and Ex. 54. He had no way of getting to DAEP since his family's only car was totaled in an accident and the district does not provide bus transportation. *Id.* at ¶ 26. And because the district threatened even harsher discipline against C.P. for wearing long hair while in DAEP, C.P.'s family had no choice but to temporarily unenroll him from the district. *Id.* at ¶ 27. C.P. is now being homeschooled and faces difficulty enrolling in another school due to Magnolia ISD's DAEP order being actively enforced against him. *Id.* C.P. urgently seeks to return to in-person school as quickly as possible without being discriminated against based on gender. *Id.* at ¶ 28.

Plaintiff T.T. was told this August that he needed to cut his hair despite having worn long hair in Magnolia ISD for the last two years without any problems. Tadlock Decl. at ¶ 3. T.T. was

12

sent to ISS on August 24 and forced to remain there for five weeks while being separated from his peers. *Id.* at ¶¶ 6 and 10. T.T.'s grades dropped precipitously while in ISS and he started failing some of his classes. *Id.* at ¶ 8. T.T.'s family urged the district to stop discriminating against him based on gender through the grievance process and by speaking at school board meetings, but the district inflicted even more punishment against him. *Id.* at ¶ 10. On September 30, Magnolia ISD ordered T.T. to be removed from campus and sent to DAEP. *Id.* at ¶ 10 and Ex. 55. Faced with the threat of increasingly harsh punishments simply for wearing long hair, T.T.'s family was left with no meaningful option but to temporarily unenroll him from the district. *Id.* at ¶ 13. He is now being homeschooled and faces tremendous difficulty enrolling in another district because of Magnolia ISD's active DAEP placement against him simply for wearing long hair. *Id.* at ¶ 15 and Ex. 55. T.T. seeks to return to Magnolia ISD as soon as possible without being discriminated against based on gender. *Id.* at ¶ 14.

Plaintiff T.M. is non-binary and wore long hair last spring as a way to express their gender identity without being disciplined. Miller Decl. at ¶ 7. But this August, Magnolia ISD informed T.M.'s mom that T.M. would need to cut their hair based on the gender that they were assigned at birth. T.M. was then forced to spend nine school days in ISS, where they were ostracized from their friends, denied regular classroom instruction, and limited to only two restroom breaks and two water breaks per day. *Id.* at ¶¶ 8–16. On August 23, T.M.'s mom spoke to the school board and the media about Magnolia ISD's discrimination against her child, and the *Houston Chronicle* ran a story about the district's ongoing harms to T.M. *Id.* at ¶ 14.

After this article was published, Magnolia ISD agreed to a 60-day "pause" on enforcement of the district's gender-based hair policy only against T.M. Despite this temporary pause, *Id.* at ¶ 16. T.M.'s grievances asking the district to grant an exception for its hair policy

were denied and the district prohibited T.M. from participating in student government on

October 14—citing a "valid ISS placement" against them. *Id.* at ¶¶ 20–21 and Exs. 56–58.

Although T.M. was temporarily permitted to return to regular classes, the pause on enforcement

against them is set to expire on October 30 and T.M. faces an imminent risk of being sent to ISS

and DAEP if the district's hair policy is allowed to be enforced. *Id.* at ¶ 22.

Plaintiff T.B. has worn long hair in Magnolia ISD without any problem for the past five

years. Berger Decl. at ¶ 4. But this August, he was sent to ISS for wearing long hair. *Id.* at ¶ 10.

While in ISS, T.B. was separated from his friends, denied classroom instruction, and subject to

stringent and overbearing rules while in ISS, such as not being allowed to talk to other students

and only being permitted to use the restroom twice per day at scheduled times. *Id.* at ¶¶ 12–13.

T.B. was also not allowed to participate in marching band events while in ISS, even while other

boys at his school were allowed to play football in front of the marching band while continuing

to wear long hair. *Id.* at ¶¶ 15–16 and 19. C.P. was also pushed to drop out of Advanced

Placement Physics since he could not attend his lunch-time study group while in ISS and fell

behind due to the lack of classroom instruction. *Id.* at ¶ 11. Because of the severity of these

punishments and missing out on educational and extracurricular opportunities, T.B. made the

difficult decision to get a haircut for the first time in five years at the end of August after being

forced to spend eight school days in ISS. *Id.* at ¶ 18. While this decision enabled him to return to

classes and return to band, T.B.'s hair is already growing back and he faces an imminent risk of

being subject to severe punishments again under Magnolia ISD's discriminatory hair policy. *Id.*

at ¶ 20.

Plaintiff R.P. was told before school started that he needed to cut his hair or would be

sent to ISS. Garside Decl. at ¶ 12. In order to avoid the harms of being stuck in ISS, R.P. made

the difficult decision to cut his hair at the start of this school year. *Id.* at ¶ 13. But R.P.'s hair is already growing back and he does not want to be forced to cut it again in order to avoid the harsh penalties of Magnolia ISD's gender-based hair policy. *Id.* at ¶¶ 16–17.

Plaintiff C.W. was informed during the second week of school that he needed to cut his hair or would be sent to ISS. Waugh Decl. at ¶¶ 5–7 and 9. After school administrators announced publicly that students like C.W. would be required to cut their hair or face harsh disciplinary consequences, other students started criticizing and teasing C.W. for wearing long hair. *Id.* at ¶ 8 and Ex. 59. He was forced to get a haircut on August 23 in order to avoid being sent to ISS, but his hair has now grown long again and he faces an imminent threat of being punished if Magnolia ISD is permitted to keep enforcing its discriminatory hair policy. *Id.* at ¶¶ 10–11 and 13.

Requiring Plaintiffs to conform to Magnolia ISD's gender-specific hair-length policy reflects and reinforces discriminatory and harmful gender stereotypes about "masculinity" and "femininity"—harms against which the Equal Protection Clause and Title IX seek to protect. Gender-specific dress and grooming policies enhance gender distinctions in the classroom and perpetuate gender stereotypes and bias. Such stereotypes, in turn, often lead to negative academic, social, and psychological consequences for children, including by impacting their self-confidence, interest, sense of belonging, and motivation about their academic abilities.

## VI.    While Plaintiffs Have Been Severely Punished, Many Other Students in Magnolia ISD, Including Boys on the High School Football Teams, Have Worn Long Hair Without Repercussion

As Plaintiffs have had their educational careers upended by Magnolia ISD's gender-based hair restrictions, other students in the district continue to wear long hair without any problem. All students in the district, including Plaintiffs T.T., T.B., T.M., R.P., and C.W., wore

long hair last school year at Magnolia ISD without any issue. Tadlock Decl. at ¶ 4; Miller Decl. at ¶ 7; Berger Decl. at ¶ 6; Garside Decl. at ¶ 11; Waugh Decl. at ¶ 4. This school year, all girls in the district are permitted to wear long hair, including by pinning it up or having it in a bun or ponytail. *See* Ex. 1 at 42. These hairstyles, when donned by girls, seemingly do not implicate these students' grooming and hygiene, discipline, disruption, safety, or respect for authority.

Some boys at Magnolia ISD have also been permitted to keep wearing long hair this school year, even while Plaintiffs have been severely disciplined for similar conduct. Every week from the end of August through the filing of this motion, Magnolia ISD has published photos and videos online of boys in the district who wear long hair that appears to violate the district's gender-based hair restrictions. *See* Kumar Decl. at ¶¶ 6–26 and Exs. 4–47. These students have been featured on Magnolia West High School's weekly video announcements, and they have also been permitted to play football every Friday night for Magnolia High School. *Id.* While Plaintiff C.P. has been forced to miss all of his tennis practices and matches and T.B. was forced to miss marching band while in ISS, other boys in the district have been allowed to keep wearing long hair, highlighting the arbitrary and discriminatory nature of Magnolia ISD's gender-based hair policy.

## ARGUMENT

Plaintiffs require the urgent assistance of this Court so they can have equal access to an education and extracurricular opportunities at Magnolia ISD. Although Plaintiffs have repeatedly and respectfully shared their concerns directly with the district in an attempt to resolve this situation, Magnolia ISD has only intensified punishments against them, causing Plaintiffs immense and irreparable harm and leaving injunctive relief as the only option to protect

16

Plaintiffs' constitutional and federal rights. Plaintiffs have established each of the four requirements for this Court to issue a temporary restraining order and preliminary injunction.

## I.      Plaintiffs Have a Substantial Likelihood of Success on Their Claims

Magnolia ISD's hair policy actively, and daily, harms Plaintiffs because it facially discriminates based on gender. As such, Plaintiffs have established a *prima facie* case of gender discrimination under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Title IX of the Education Amendments of 1972. Magnolia ISD has not and could not provide any justification that would survive scrutiny under the Constitution and federal law.

### A.  Magnolia ISD's Gender-Based Hair Policy Violates the Equal Protection Clause

#### 1.  Magnolia ISD's Grooming Policy Facially Discriminates Based on Gender and Is Subject to Heightened Scrutiny

The Equal Protection Clause protects the right to equal treatment under law regardless of sex. *United States v. Virginia*, 518 U.S. 515, 533 (1996). As a result, any government classification based on gender is "subject to review under the heightened scrutiny that now attends '*all* gender-based classifications.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quoting J.*E.B. v. Alabama ex rel. T. B*., 511 U.S. 127, 136 (1994)) (emphasis added). The Supreme Court has consistently acknowledged that "'our Nation has had a long and unfortunate history of sex discrimination,' . . . a history which warrants the heightened scrutiny we afford all gender-based classifications today." *J.E.B.,* 511 U.S. at 136 (quoting *Frontiero v. Richardson*, 411 U.S. 677, 683 (1973)). Magnolia ISD's district-wide dress and grooming code facially discriminates against Plaintiffs based on gender by requiring hair "*for male students*" to be "no

longer than the bottom of a dress shirt collar, bottom of the ear, and out of the eyes." Ex. 1 at 42. As a result, this gender classification is subject to heightened scrutiny under binding precedent.

The Fifth Circuit has repeatedly followed Supreme Court precedent to apply heightened scrutiny to claims of gender discrimination under the Equal Protection Clause. *See, e.g., McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 422 (5th Cir. 1989) ("If an action is gender-based, then it is subject to heightened scrutiny"); *Ayton v. Holder*, 686 F.3d 331, 338 (5th Cir. 2012) (applying heightened scrutiny to a federal immigration statute). In the context of public education, heightened scrutiny still applies to all government-drawn gender classifications. *See, e.g., Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982); *Virginia*, 518 U.S. at 533; *Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*, 421 F. App'x 366, 372 (5th Cir. 2011). That a policy "discriminates against males rather than against females does not exempt it from scrutiny or reduce the standard of review." *Hogan*, 458 U.S. at 723.

To the extent that Defendant will seek to rely on it, *Karr v. Schmidt*, 460 F.2d 609, 618 (5th Cir. 1972), approved of a school district's gender-based grooming policy nearly 50 years ago—but this case is contrary to binding Supreme Court precedent and inapposite for three reasons. First, the *Karr* decision failed to address the Supreme Court's decision to apply the Equal Protection Clause for the first time to invalidate a sex classification just a year before in *Reed v. Reed*, 404 U.S. 71 (1971). Second, shortly after the decision in *Karr*, the Supreme Court made explicit that heightened scrutiny applies to all government-drawn gender classifications. *See Craig v. Boren*, 429 U.S. 190 (1976). Since *Craig* was decided, there has been an unbroken line of Supreme Court precedent establishing that heightened scrutiny now attends "*all* gender-based classifications." *Morales-Santana*, 137 S. Ct. at 1689 (emphasis added). Third, *Karr* failed to address the question presented here. Rather than address whether a categorical distinction

between how girls and boys are treated violates the Equal Protection Clause, the Fifth Circuit evaluated how certain boys were treated as compared to other boys: "In this case, however, the theory of the district court is that, *as between male students*, any classification based upon hair length contravenes the Equal Protection guarantee." 460 F.2d at 618 (emphasis added). In finding no equal protection violation as between male students, the Fifth Circuit distinguished a Seventh Circuit decision that invalidated "hair regulations a[s] violative of the Equal Protection clause because they apply solely to male students and not to female students." *Id*. at 616 (citing *Crews v. Cloncs*, 432 F.2d 1259, 1266 (7th Cir. 1970)), which is more analogous to the fact pattern here.

In accordance with Supreme Court precedent, subsequent courts in this Circuit have correctly interpreted *Karr* not to foreclose claims of gender discrimination in public school dress codes that are brought under the Equal Protection Clause. In *Arnold v. Barbers Hill Independent School District*, this Court found that *Karr* does not bar claims of gender discrimination against a school district's hair policy that only applies to boys. 479 F. Supp. 3d 511, 521 (S.D. Tex. 2020) ("*Karr* did not discuss the questions presented by K.B.—let alone resolve them adversely to K.B.—because the *Karr* Court was not presented with those questions."). The Court in *Arnold* further explained that *Karr* predates nearly all Supreme Court precedent that now mandates heightened scrutiny for every government-imposed gender classification. *Id.* ("In any event, [*Karr*] predates the Supreme Court precedent the application of which it purportedly precludes."); *see also Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *3 (S.D. Miss. Sept. 15, 2011) ("*Karr* does not address alleged sex discrimination. . . . Here, Sturgis squarely raises the sex-discrimination argument *Karr* avoided.").

19

## 2.   Magnolia ISD's Gender-Based Hair Policy Fails Heightened Scrutiny

The Supreme Court insists that the burden of justifying gender-based discrimination under the Equal Protection Clause "is demanding and it rests entirely on the State." *Virginia*, 518 U.S. at 531. Magnolia ISD must establish that treating students differently based on gender serves "important governmental objectives" and that the means employed for this differential treatment are "substantially related to the achievement of those objectives." *See Hogan,* 458 U.S. at 724 (quoting *Wengler v. Druggists Mutual Ins. Co.*, 446 U.S. 142, 150 (1980)). In other words, "gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action." *Virginia*, 518 U.S. at 531 (quoting *J.E.B.,* 511 U.S. at 136). Here, Magnolia ISD's gender-based hair policy entirely fails this standard.

When determining whether a government-drawn gender classification meets heightened scrutiny, "[c]are must be taken in ascertaining whether the statutory objective itself reflects archaic and stereotypic notions." *Hogan,* 458 U.S. at 725. "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Virginia*, 518 U.S. at 533; *Morales-Santana*, 137 S. Ct. at 1693 n.13 ("Even if stereotypes frozen into legislation have 'statistical support,' our decisions reject measures that classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn.").

The stated justification for Magnolia ISD's policy is "to teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority." Ex. 3. Such goals, however, are irrelevant to any distinctions based on the gender of students. *See*

*Morales-Santana,* 137 S. Ct. at 1690 (requiring specific justification for a "'gender-based' and 'gender-biased' disparity" and not just a policy in general).

There is no justification that supports the need for differential grooming rules based on gender to advance the stated objectives of the district. Instead, the district's policy is based purely on gender stereotypes and "overbroad generalizations about the different talents, capacities, or preferences of males and females." *Virginia*, 518 U.S. at 533. Indeed, the district has dispensed with this requirement for all students in the past and demonstrated that this gender-based hair policy has no rationale at all. Plaintiffs T.T. and T.B. have worn long hair in the district for years without any effect on these students' grooming and hygiene, discipline, disruption, safety, or respect for authority. Needless to say, all girls at Magnolia ISD—approximately half of more than 13,000 students in the district—are free to wear their hair as long as they want, pin it up, or keep their hair in a bun or ponytail. *See* Ex. 1 at 42. And the district's own social media pages demonstrate that wearing long hair is tolerated and promoted for some students at Magnolia ISD at the same time that this policy is arbitrarily and discriminatorily enforced against Plaintiffs. *See* Kumar Decl. at ¶¶ 6–26 and Exs. 4–47.

After Plaintiffs brought this discriminatory policy to the district's attention, Magnolia ISD issued a statement to the media that advances two equally inadequate justifications for the district's gender-based hair policy: "Magnolia ISD has used a dress code that sets different standards for boys and girls for many years. . .  Magnolia ISD's approach to the dress code reflects the values of our community at large." Kumar Decl. at ¶ 28 and Ex. 52. Regardless of how long Magnolia ISD has had this policy in place, the Supreme Court requires any government-based gender classification to "substantially serve an important governmental interest *today*" in recognition of the nation's long history of gender discrimination and the fact

that "'new insights and societal understandings can reveal unjustified inequality . . . that once passed unnoticed and unchallenged.'" *Morales-Santana,* 137 S. Ct. at 1690 (quoting *Obergefell v. Hodges*, 576 U.S. 644, 647 (2015)).

Even if Magnolia ISD is correct in stating that its "approach to the dress code reflects the values of our community at large," community values can never be used to justify intentional discrimination, since this would eviscerate the promise of equal protection that protects the rights of everyone. *See, e.g., Keyes v. Sch. Dist. No. 1, Denver, Colorado*, 396 U.S. 1215, 1217 (1969) (ordering school desegregation to continue regardless of public opinion because "the desirability of developing public support for a plan designed to redress de jure segregation cannot be justification for delay"). Magnolia ISD's belief that its hair policy reflects the values of everyone in its community is also belied by its own social media pages, which continue to post photos and videos of boys in the district—particularly members of the high school football teams—wearing visibly long hair. *See* Kumar Decl. at ¶¶ 6–26 and Exs. 4–47.

There is simply no justification for inflicting harm on students who wear long hair based solely on gender and Plaintiffs are substantially likely to prevail on their claims of gender discrimination under the Equal Protection Clause.

### B.  Magnolia ISD's Gender-Based Hair Policy Violates Title IX

Plaintiffs are also substantially likely to prevail on their claims under Title IX, since Magnolia ISD's gender-based grooming policy explicitly discriminates based on sex and has deprived them of equal opportunities in violation of federal law. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In addition to Title IX's clear

statutory language, the federal regulations on Title IX also prohibit school districts from

subjecting students "to separate or different rules of behavior, sanctions, or other treatment"

based on sex, 34 C.F.R. § 106.31(b)(4) and 7 C.F.R. § 15a.31(b)(4), and from "[o]therwise

limit[ing] any person in the enjoyment of any right, privilege, advantage, or opportunity" based

on sex, 34 C.F.R. § 106.31(b)(7).

The Supreme Court has held that in light of Title IX's remedial purpose to eliminate sex

discrimination, courts "must accord [Title IX] a sweep as broad as its language." *N. Haven Bd. of

Educ. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801

(1966)). And the U.S. Department of Education and U.S. Department of Justice recently

explained that where a school district enforces a "sex-based hair length policy" against students

to deny them "the benefits of their school's education program, and exclude[] them from that

program when similarly situated girls would not have been so excluded, Plaintiffs state a sex

discrimination claim under Title IX." United States' Statement of Interest, *Arnold v. Barbers Hill

ISD*, Case No 4:20-cv-01802, Dkt. 155 at 17 (S.D. Tex. July 23, 2021).

Here, Magnolia ISD's gender-based hair policy has violated Title IX by excluding

Plaintiffs from regular classes and extracurricular activities, denying them the same educational

opportunities afforded to other students, and discriminating against them based on gender. This

conclusion comports with the plain meaning of the statute, as well as its purpose to root out

stereotypes, like those embodied by Magnolia ISD's gender-specific hair policy, and to

guarantee all students full and equal opportunity in education regardless of gender. In a similar

case, the Seventh Circuit held that a hair length requirement that applied only to boys in a public

education program violated both the Equal Protection Clause and Title IX because it drew a

facial classification on the basis of sex and caused students harm without any statutory

exception. *Hayden ex rel. A.H. v. Greensburg Community School Corporation*, 743 F.3d 569, 583 (7th Cir. 2014). Similarly, the Fourth Circuit recently found that a challenge to a facially discriminatory dress code policy requiring girls, but not boys, to wear skirts could proceed under Title IX. *Peltier v. Charter Day School, Inc.,* 8 F.4th 251, 273 (4th Cir. 2021).

The Fifth Circuit has also recognized that Title IX protects students from gender discrimination in the enforcement of public school dress and grooming codes. In *Sewell v. Monroe City School Board,* the Fifth Circuit reversed dismissal of a student's race and sex discrimination claims against a school district in Louisiana. 974 F.3d 577, 585 (5th Cir. 2020). Although many students in a school district dyed their hair various colors, a Black male student was the only person who was punished for it, and a teacher asked the student if he "was gay with 'that mess' in his head." *Id.* at 584. The Fifth Circuit allowed the student's Title IX claim for gender-based harassment to proceed because the teacher's words "could imply animus toward males who do not conform to stereotypical notions of masculinity." *Id.* (citing *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 456–60 (5th Cir. 2013) (en banc)). Here, Magnolia ISD is similarly discriminating against Plaintiffs for not conforming to stereotypical notions of masculinity and discriminating against them based on sex in violation of Title IX.

Title IX is absolute in its prohibition against "discrimination" in any program or activity that receives federal funds, subject to narrow, clearly enumerated exceptions. Although the statute contains certain defined exceptions (covering, for example, religious organizations, social fraternities or sororities, "voluntary youth service organizations," *see* 20 U.S.C. § 1681(a)(2)-(9) (2012), or separate living facilities, *see* 20 U.S.C. § 1686 (2012)), gender-differentiated dress or grooming codes are not among them. Plaintiffs have a substantially likelihood of prevailing on

their claims under Title IX because Magnolia ISD is facially discriminating against them based on gender and denying them educational opportunities with no statutory exception.

## II.     Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction

Plaintiffs are suffering immediate and irreparable due to Magnolia ISD's unlawful gender discrimination against them, and each day that Plaintiffs remain exposed to severe punishment because of their gender compounds these injuries in ways that cannot be repaired. Plaintiffs have faced severe and irreparable injury while being stuck in ISS for more than five weeks: they have been denied classroom instruction, separated and ostracized from their friends, and forced to miss out on electives, sports, and school activities. As Plaintiffs and their families asserted complaints of gender discrimination to the district in an attempt to remedy these harms, Magnolia ISD only escalated punishments against them and ordered three students to be removed from campus, which pushed these students to drop out of school entirely.

Confronted with increasingly harsh consequences, Plaintiffs A.C., C.P., and T.T. temporarily unenrolled from the district, but Magnolia ISD's DAEP placement order against them actively impedes these Plaintiffs' ability to enroll in any other public school in Texas. Loredo Decl. at ¶ 25; Privitt Decl. at ¶ 27; and Tadlock Decl. at ¶ 15. These students are now stuck being homeschooled and are being deprived every day of the academic and extracurricular opportunities that Magnolia ISD is providing to other students. *Id.* Without an injunction from this Court, these Plaintiffs will languish educationally, socially, and emotionally, which risks marring their future opportunities.

The other Plaintiffs in this case are also at the precipice of facing greater harm to their education and future. While the pause on enforcement against T.M. is set to expire on October 30, nine days of ISS have already tarnished T.M.'s educational record, barred them from joining

student government, and caused them significant stress and harm. Miller Decl. at ¶ 22. Absent urgent intervention from this Court, T.M. will be again excluded from school to their detriment and could be placed in ISS or DAEP within the next two weeks. *Id.*

Plaintiff T.B.'s constitutional rights were already violated by being forced to conform to gender stereotypes in order to be permitted to return to classes and continue participating in band. Berger Decl. at ¶ 18. Plaintiff R.P. also cut his hair in order to not derail his second-grade year, Garside Decl. at ¶ 13, as did Plaintiff C.W. so that he could stay in his seventh-grade classes. Waugh Decl. at ¶ 11. But none of these students wish to surrender their constitutional rights and be forced to cut their hair again. These Plaintiffs cut their hair in August but it has now grown back and is long once again. Berger Decl. at ¶ 20; Garside Decl. at ¶ 16; Waugh Decl. at ¶ 13. Magnolia ISD could imminently expose these students to the same cascading consequences that have derailed other Plaintiffs' education absent injunctive relief from this Court. *Id.*

Plaintiffs are also faced with irreparable harm every day that Magnolia ISD is able to continue enforcing its discriminatory hair policy against them, and the deprivation of any student's constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976).

### III.    The Balance of Equities Tips Sharply in Plaintiffs' Favor

The harm to Plaintiffs in the absence of injunctive relief will be substantial and immediate. In contrast, Magnolia ISD cannot show any harm from not enforcing this unconstitutional policy. The district already allows every girl the opportunity to wear long hair without repercussion and arbitrarily exempts some boys from this requirement without any indication of negative effects on the school environment. *See Arnold*, 479 F. Supp. 3d at 530 (recognizing that there is no harm to a public school district in allowing a male student to wear

long hair, when the district had already previously allowed another male student to wear long hair with "no apparent effect on the school or its students"). On balance, equity falls squarely and completely on the side of granting Plaintiffs' request for injunctive relief.

## IV.     Injunctive Relief Is Necessary to Serve the Public Interest

"[T]he public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992) (citation omitted). Conversely, "[p]ublic interest is never served by a state's depriving an individual of a constitutional right." *Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978). Here, it would disserve the public interest to permit Magnolia ISD to keep engaging in unconstitutional and unlawful gender discrimination while this lawsuit is resolved.

## V.     The Court Should Not Require Plaintiffs to Provide Security Prior to Issuing a Temporary Restraining Order.

The Fifth Circuit has ruled that a court "may elect to require no security at all" when issuing a temporary restraining order under Federal Rule of Civil Procedure 65(c). *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978). As students who are seeking to enforce their civil rights, Plaintiffs request that this Court exercise its discretion to require no security in issuing this relief. *See, e.g.*, *Arnold v. Barbers Hill ISD*, Case No 4:20-cv-01802, Dkt. 99 at 2 (S.D. Tex. Aug. 17, 2020) (requiring no bond for injunctive relief against enforcement of a public school district's discriminatory dress and grooming policy).

## CONCLUSION

Plaintiffs satisfy all of the requirements for a temporary restraining order and preliminary injunction to be issued and respectfully request the urgent assistance of this Court to stop Magnolia ISD from continuing to engage in unconstitutional and unlawful gender discrimination.

Respectfully submitted,


/s/Brian Klosterboer
Brian Klosterboer, *attorney-in-charge*
TX Bar No. 24107833, SDTX No. 3314357
Adriana Pinon
TX Bar No. 24089768, SDTX No. 1829959
Andre Segura
TX Bar No. 24107112, SDTX No. 3123385
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306
Houston, TX 77288
Tel. (713) 942-8146
Fax. (713) 942-8966
bklosterboer@aclutx.org
apinon@aclutx.org
asegura@aclutx.org

Linda Morris*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
Tel. (212) 519-7823
lindam1@aclu.org

## CERTIFICATE OF CONFERENCE

At 8:27 am on Thursday, October 21, Plaintiffs advised the counsel for Magnolia ISD of their intention to file this emergency motion for temporary restraining order and preliminary injunction. Plaintiffs requested counsel's position on the requested motion and the relief sought herein. Counsel acknowledged receipt of Plaintiffs' request but did not respond with the Defendant's position prior to the filing of this motion. Given the urgency of this request, Plaintiffs hereby file this motion.

/s/ Brian Klosterboer
Brian Klosterboer


## CERTIFICATE OF SERVICE

Plaintiffs' counsel will cause this motion and its attachments to be served upon Defendant electronically pursuant to the U.S. District Court for the Southern District of Texas's electronic court filing system (ECF) and also via e-mail.

/s/ Brian Klosterboer
Brian Klosterboer